UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| MARVIN H. SCHWARTZ, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>    vs.<br><br>SILVER BAY REALTY TRUST CORPORATION, IRVIN R. KESSLER, THOMAS W. BROCK, TANUJA M. DEHNE, STEPHEN G. KASNET, THOMAS E. SIERING, DARYL J. CARTER, W. REID SANDERS, MARK WELD, TRICON CAPITAL GROUP INC. and TAH ACQUISITION HOLDINGS LLC,<br><br>                Defendants. | Civ. No.<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><br><br><br><br><br><br><br><br><br><br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Marvin H. Schwartz ("plaintiff"), individually and on behalf of all others similarly situated, by the undersigned counsel, respectfully brings this class action for violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, against the herein named defendants and alleges the following:

## SUMMARY OF THE ACTION

1.    This is a shareholder class action brought on behalf of the former holders of Silver Bay Realty Trust Corp. ("Silver Bay" or the "Company") common stock against Silver Bay, its board of directors (the "Board"), Tricon Capital Group Inc. ("Tricon"), and TAH Acquisition Holdings LLC ("TAH") for violations of federal law arising out of the sale of the Company to Tricon and its affiliates (the "Acquisition") without disclosing all material information to Silver Bay shareholders concerning the Acquisition.  Named as non-parties herein are: Silver Bay Operating Partnership L.P., a Delaware limited partnership; Silver Bay Management LLC, a Delaware limited liability company and wholly-owned subsidiary of Silver Bay; and TAH Acquisition LP, a Delaware limited partnership.  This matter arises under §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

2.    On February 27, 2017, Silver Bay and Tricon announced they had entered into a definitive merger agreement (the "Merger Agreement") under which Tricon would acquire Silver Bay.  According to the Merger Agreement, Silver Bay shareholders would receive just $21.50 in cash for each share of Silver Bay common stock held immediately

before the effective time of the Acquisition.  The Acquisition significantly undervalues Silver Bay.

3.      The Acquisition was driven by certain members of Silver Bay management and the Board, all of whom obtained immediate liquidity for millions of illiquid Silver Bay shares and/or the immediate vesting of unvested shares, most of which were not guaranteed to vest.  The Board also heavily incentivized its financial advisor, Goldman Sachs & Co. ("Goldman"), to consummate the Acquisition by making more than 93% of Goldman's fee contingent upon the closing of the Acquisition.

4.      In an attempt to encourage and obtain shareholder support for the Acquisition, on March 17, 2017, Defendants filed and disseminated to shareholders a materially false and misleading Preliminary Proxy Statement on Schedule 14A, and on March 28, 2017, Defendants filed and disseminated to shareholders a materially false and misleading Definitive Proxy Statement on Schedule 14A (collectively the "Proxy"). Then, on April 24, 2017, Defendants filed a materially false and misleading Form 8-K (the "Proxy Supplement"), which both failed to cure the materially false and misleading statements in the Proxy discussed herein and contained false and misleading statements of its own.

5.      On May 5, 2017, Silver Bay shareholders approved the Acquisition. The false and misleading statements in the Proxy and Proxy Supplement were an essential link in causing plaintiff and the other Silver Bay shareholders to vote in favor of the Acquisition. The Acquisition closed on May 9, 2017 (the "Closing Date").

6.     The Proxy and Proxy Supplement, which both recommended that Silver Bay shareholders vote in favor of the Acquisition, omitted and/or misrepresented material information about Silver Bay's intrinsic value.  Specifically, the Proxy and Proxy Supplement omitted an internal calculation (*i.e.*, a calculation performed by Silver Bay or Goldman using Silver Bay's up-to-date and non-public data) of Silver Bay's net asset value ("NAV").  This omission is particularly material because NAV is the benchmark metric used to value REITs and Silver Bay's internal NAV is likely much higher than the unfair merger price of $21.50 per share.  As Silver Bay has repeatedly stated, "[NAV] is useful as an additional tool for investors seeking to value the Company.  This metric ***should be considered*** along with other available information in valuing and assessing Silver Bay."  This omission renders statements in the Proxy and Proxy Supplement false and/or misleading in violation of §14(a) of the 1934 Act.

7.     As explained herein, this information was material to the decision of the Silver Bay shareholders whether or not to vote in favor of the Acquisition.  As such, Defendants' violations of §§14(a) and 20(a) of the 1934 Act harmed shareholders by preventing them from casting an informed vote on the Acquisition and ultimately caused them to forfeit their shares for the inadequate merger consideration. Plaintiff therefore seeks monetary damages to remedy Defendants' violations of §§14(a) and 20(a).

8.     In sum, each of the Defendants has violated the federal securities laws and caused harm to plaintiff and other Silver Bay shareholders.  Rather than acting in the best interests of the Company's shareholders, Defendants effectuated the Acquisition to aggrandize their personal interests.  To ensure shareholder support for the Acquisition,

Defendants presented the false and misleading Proxy and Proxy Supplement to Silver Bay shareholders. As a result of the materially false and misleading statements in the Proxy and Proxy Supplement, plaintiff and the other Silver Bay shareholders were harmed because they were unable to cast an informed vote on the Acquisition, which ultimately caused them to forfeit their shares for the unfair price of just $21.50 per share.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over the claims asserted herein pursuant to §27 of the 1934 Act because the claims asserted herein arise under §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

10.    This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and/or maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and Silver Bay's headquarters are located at 3300 Fernbrook Lane North, Suite 210, Plymouth, Minnesota 55447.

## PARTIES

12.    Plaintiff Marvin H. Schwartz was at all times relevant hereto a shareholder of Silver Bay.

13.     Defendant Silver Bay was a corporation organized and existing under the laws of Maryland and headquartered in Plymouth, Minnesota.

14.     Defendant Irvin R. Kessler ("Kessler") was at all relevant times hereto a director and Chairman of the Board of Silver Bay.

15.     Defendant Thomas W. Brock ("Brock") was at all relevant times hereto a director of Silver Bay, and served as president and CEO of Silver Bay since January 2016.

16.     Defendant Tanuja M. Dehne ("Dehne") was at all relevant times hereto a director of Silver Bay.

17.     Defendant Stephen G. Kasnet ("Kasnet") was at all relevant times hereto a director of Silver Bay.

18.     Defendant Thomas E. Siering ("Siering") was at all relevant times hereto a director of Silver Bay.

19.     Defendant Daryl J. Carter ("Carter") was at all relevant times hereto a director of Silver Bay.

20.     Defendant W. Reid Sanders ("Sanders") was at all relevant times hereto a director of Silver Bay.

21.     Defendant Mark Weld ("Weld") was a director of Silver Bay from January 2017 until the Closing Date.

22.     The defendants named in ¶¶14-21 are sometimes collectively referred to herein as the "Individual Defendants."

23.    Defendant Tricon is a corporation headquartered in and organized under the laws of the province of Ontario, Canada.

24.    Defendant TAH is a Delaware limited liability company, an indirect subsidiary of Tricon, and the sole owner of Tricon LP.

25.    The parties named in ¶¶14-21, 23-24 are sometimes collectively referred to *supra* and *infra* as "Defendants."

26.    Non-party Silver Bay Operating Partnership LP is a Delaware limited partnership.

27.    Non-party Silver Bay Management LLC is a Delaware limited liability company, a wholly-owned subsidiary of Silver Bay, and the sole general partner of Silver Bay Operating Partnership LP.  Silver Bay Management LLC generally has the exclusive power to manage and conduct the business and affairs of Silver Bay Operating Partnership LP, subject to certain limited approval and voting rights of the limited partners.

28.    Non-party TAH Acquisition LP is a Delaware limited partnership and is solely owned by TAH Acquisition Holdings LLC.

## CLASS ACTION ALLEGATIONS

29.    Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of former holders of Silver Bay common stock who were harmed by Defendants' actions described herein (the "Class").  Excluded from the Class are Defendants and any person, firm, trust, corporation or other entity related to or affiliated with any defendant.

30.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

31.    The Class is so numerous that joinder of all members is impracticable.  The precise number of Class members is unknown to plaintiff at this time, but the names and addresses of the Class members can be ascertained from the books and records of Silver Bay.  There were more than 35 million outstanding shares of Silver Bay common stock as of the Closing Date held by hundreds or thousands of individuals and entities scattered throughout the United States.

32.    There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class member.   The common questions include, *inter alia*:

(a)    whether Defendants violated the federal securities laws as alleged in this Complaint, including violating and/or participating in a scheme to violate §§14(a) and/or 20(a) of the 1934 Act;

(b)    whether Defendants have made false or misleading statements in the Proxy and/or Proxy Supplement in violation of §14(a) of the 1934 Act; and

(c)    whether plaintiff and the other members of the Class were harmed by the false and misleading statements in the Proxy or Proxy Supplement.

33.    Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interest adverse to the Class.

34.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

35.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class.

36.    Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

37.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Background**

38.    Silver Bay was a publicly traded REIT that focused primarily on the acquisition, renovation, leasing, and management of single-family properties in several markets in the United States.  Silver Bay generated virtually all of its revenue by leasing its portfolio of single-family properties.  As of December 31, 2016, Silver Bay owned 9,044 single-family properties in Arizona, California, Florida, Georgia, Nevada, North Carolina, Ohio, South Carolina, and Texas, excluding properties reflected as assets held for sale on its consolidated balance sheets.

- 8 -

39.    Tricon is a principal investor and asset manager focused on the residential real estate industry in North America with approximately $3.0 billion of assets under management.  Tricon owns, or manages on behalf of third-party investors, a portfolio of investments in land and homebuilding assets, single-family rental homes, manufactured housing communities and multi-family development projects.   Tricon's business objective is to invest for investment income and capital appreciation through its principal investment business segments and to earn fee income through its private funds and advisory business.

**Brief Summary of the Sales Process**

40.    From the summer of 2015 through the winter of 2016, the Board and Goldman attempted to sell all or a portion of Silver Bay.  Silver Bay's search for strategic alternatives was triggered by the fact it was trading at prices below its true value. Between August 2015 and October 2015, Goldman contacted 70 parties to gauge their interest in the single-family residential real estate industry, and 13 of the 70 parties entered into non-solicitation and standstill agreements.  However, by February 2016, the Board decided to no longer actively engage in discussions with respect to a strategic transaction and opted instead to focus on its intermediate strategy.

41.    On January 19, 2016, David Miller ("Miller"), Silver Bay's then-current CEO, president and director, resigned, and Brock was appointed interim CEO and president.   On June 21, 2016, the Board appointed Brock as permanent CEO and president.  As will be discussed in more detail below, while Miller served as CEO, Silver Bay reported its NAV virtually every quarter from August 2013 through December 2015.

However, after Brock was appointed permanent CEO and president, Silver Bay did not report its NAV for any quarter or period of time.

42.    Almost immediately after Brock was appointed permanent CEO and president, Silver Bay and Tricon began discussing the Acquisition.  Roughly six months later, Tricon offered to purchase Silver Bay for $21.50 per share.  Shortly thereafter, on February 27, 2017, the Board unanimously approved the Acquisition and authorized the execution of the Merger Agreement.

43.    In an attempt to obtain shareholder support for the Acquisition, on March 17, 2017, Defendants filed and disseminated to shareholders the materially false and misleading Preliminary Proxy Statement on Schedule 14A; on March 28, 2017, Defendants filed and disseminated to shareholders the materially false and misleading Definitive Proxy Statement on Schedule 14A; and on April 24, 2017, Defendants filed the materially false and misleading Proxy Supplement. Silver Bay held a special shareholder meeting on May 5, 2017, at which time shareholders approved the Acquisition.  The Acquisition closed on May 9, 2017.  Due to the Proxy's and Proxy Supplement's deficiencies identified herein, Silver Bay shareholders were unable to cast an informed vote on the Acquisition.

**Silver Bay's Ongoing and Increasing Success**

44.    Silver Bay experienced significant growth and success throughout 2016, especially in the final quarter of 2016.  In fact, Brock labeled the fourth quarter of 2016 – the final full quarter before the Board agreed to sell Silver Bay – the best quarter in Silver

Bay's history.  Accordingly, Silver Bay should not have been sold for the unfair price of $21.50 per share.

45.    On February 27, 2017, Silver Bay issued a press release announcing its "Strong Fourth Quarter and Full Year 2016 Financial Results."  Specifically regarding its fourth quarter financial results, Silver Bay stated:

> Silver Bay reported total revenue of $32.5 million for the fourth quarter of 2016, a 5.9% increase compared to total revenue of $30.6 million for the fourth quarter of 2015.  This increase was primarily due to increases in the Company's rental rates and occupancy rate.  The Company owned 9,044 properties as of December 31, 2016, compared to 9,022 properties as of December 31, 2015.  Net income attributable to common stockholders for the fourth quarter of 2016 was $2.7 million, or $0.07 per diluted common share, compared to net loss attributable to common stockholders for the fourth quarter of 2015 of $0.8 million, or $0.02 per basic and diluted common share.

> The Company reported net operating income ("NOI") of $19.7 million for the fourth quarter of 2016, an 11.2% increase compared to NOI of $17.8 million for the fourth quarter of 2015.  Core NOI Margin improved 270 basis points to 61.4% in the fourth quarter of 2016 as compared to the same period a year ago.  The increase is primarily due to growth in total revenue.  Same-Home NOI increased to $13.0 million for the fourth quarter of 2016, a 13.6% increase compared to Same-Home NOI of $11.5 million for the fourth quarter of 2015.  Same-Home NOI Margin improved 390 basis points to 60.7% in the fourth quarter of 2016 as compared to the same period a year ago.  The increase in Same-Home NOI is primarily due to an increase in Same-Home total revenue and, to a lesser extent, a decrease in Same-Home property operating expenses.  Core funds from operations ("Core FFO") for the fourth quarter of 2016 was $9.1 million, or $0.24 per share, a 20.0% increase on a per share basis compared to Core FFO for the fourth quarter of 2015 of $7.6 million, or $0.20 per share.  NOI, Same-Home NOI and Core FFO are non-GAAP financial measures.  Reconciliations of net income (loss) to NOI, Same-Home NOI and Core FFO are included in the unaudited supplemental financial and operating data accompanying this press release.

46.    Specifically regarding its full year 2016 financial results, Silver Bay stated:

Silver Bay reported total revenue of $126.6 million for the year ended December 31, 2016, an 11.4% increase compared to total revenue of $113.7 million for the year ended December 31, 2015. The increase in total revenue for the year ended December 31, 2016 over the prior year was primarily due to an increase in the number of occupied homes during the year ended December 31, 2016 as well as increases in the Company's rental rates and occupancy rate. Net loss attributable to common stockholders for the year ended December 31, 2016 was $2.6 million, or $0.07 per basic and diluted common share, as compared to net loss attributable to common stockholders for the year ended December 31, 2015 of $9.5 million, or $0.26 per basic and diluted common share.

The Company reported NOI of $73.0 million for the year ended December 31, 2016, a 16.0% increase compared to NOI of $62.9 million for the year ended December 31, 2015. The increase is primarily due to growth in total revenue. Same-Home NOI increased to $48.4 million for the year ended December 31, 2016, a 9.9% increase compared to Same-Home NOI of $44.0 million for the year ended December 31, 2015. The increase in Same-Home NOI is primarily due to an increase in Same-Home total revenue. Core FFO for the year ended December 31, 2016 was $31.2 million, or $0.82 per share, a 24.2% increase on a per share basis compared to Core FFO for the year ended December 31, 2015 of $25.4 million, or $0.66 per share.

47.    Commenting on these results, Brock stated:

"Over the past year, we have been making excellent strides in driving efficiency across our operating platform. ***We closed out the year with the best quarter in our company's history***, including a 96.7% occupancy rate, strong rental increases on both re-leases and renewals, a Same-Home Core NOI Margin of 60.7% and record Core FFO, which I credit to the dedication and focus of our Silver Bay team."

**The Announcement of the Acquisition**

48.    Despite closing out 2016 with the best quarter in Silver Bay's history and experiencing significant growth in revenue and operating income in both the fourth quarter and full year 2016, the Board decided to sell Silver Bay for the unfair price of $21.50 per share.

49.    In the same February 27, 2017 press release discussed in ¶¶45-47, Silver Bay announced it had entered into the Merger Agreement, pursuant to which Tricon would acquire Silver Bay for $21.50 in cash per Silver Bay share.  The press release stated in pertinent part:

### SILVER BAY REALTY TRUST CORP.
### ANNOUNCES AGREEMENT TO BE ACQUIRED BY TRICON CAPITAL GROUP INC. IN $1.4 BILLION ALL-CASH TRANSACTION; REPORTS STRONG FOURTH QUARTER AND FULL YEAR 2016 FINANCIAL RESULTS

*Silver Bay Agrees to be Acquired for $21.50 Per Share in Cash Representing Aggregate Enterprise Value of $1.4 Billion*[.]

*Purchase Price Represents 19% Premium to February 24, 2017 Closing Price of $18.01 and 24% Premium to the 90 day trailing average price as of February 24, 2017*[.]

*Reports Solid Quarterly Results Which Reflect Strong Operating Performance*[.]

NEW YORK-(BUSINESS WIRE) Silver Bay Realty Trust Corp. (NYSE: SBY) (the "Company" or "Silver Bay"), a single-family rental real estate investment trust ("REIT"), today announced that its Board of Directors has unanimously approved and Silver Bay has entered into a definitive agreement pursuant to which Tricon Capital Group Inc. will acquire Silver Bay in a transaction valued at approximately $1.4 billion and announced its operating and financial results for the quarter and year ended December 31, 2016.  Silver Bay's stockholders will receive $21.50 per share in cash for each outstanding share of common stock held immediately prior to the closing of the transaction.  This purchase price represents a 19% premium to Silver Bay's closing price on February 24, 2017 of $18.01 and a 24% premium to the stock's 90 day trailing average price as of February 24, 2017.  In addition, Tricon Capital Group Inc. will assume or repay a total of approximately $600.0 million of Silver Bay's debt (net of cash on hand).

**Disabling Conflicts Infect the Process**

50.    The sales process leading to the Acquisition was driven by conflicted members of the Board and Company management who sought, and ultimately obtained,

- 13 -

liquidity for their roughly 2.7 million illiquid shares of Silver Bay stock, as well as immediate vesting for their unvested shares.  Upon the closing of the Acquisition, the Board and Company officers received nearly $57 million for their illiquid Silver Bay shares.  As part of that amount, Brock and other Company executives received roughly $8.5 million for unvested stock, more than $7 million of which was not guaranteed to vest, as it was subject to performance based vesting criteria.

51.    The Board also entered into an engagement agreement with Goldman that strongly incentivized Goldman to render a positive fairness opinion and ensure the closing of the Acquisition.  Pursuant to Goldman's engagement letter, Silver Bay will pay Goldman a transaction fee of $8 million; however, $7.5 million (or 93.75%) of the transaction fee was contingent on the closing of the Acquisition.  Stated differently, if the Acquisition did not close, Goldman would have engaged in two lengthy sales processes on behalf of Silver Bay for a total fee of only $500,000.  Adding to Goldman's conflicts, Tricon's CEO, Gary Berman ("Berman"), is an ex-Goldman employee.

**The False and Misleading Proxy and Proxy Supplement**

52.    In order to encourage and obtain shareholder support for the Acquisition, Defendants filed and disseminated to shareholders the false and misleading Proxy and Proxy Supplement in violation of §14(a) of the 1934 Act.  The Proxy and Proxy Supplement omitted and/or misrepresented material information about Silver Bay's intrinsic value, rendering portions of these documents materially misleading. Without this material information, Silver Bay shareholders were unable to properly analyze the adequacy of the merger consideration and/or whether to vote in favor of the Acquisition.

- 14 -

**The Proxy and Proxy Supplement Failed to Disclose
an Internal Calculation of Silver Bay's NAV**

53.    The Proxy and Proxy Supplement omitted an internal calculation of Silver Bay's NAV, which renders critical statements in each document materially misleading.

54.    An internal calculation of Silver Bay's NAV is material for several reasons. First, NAV is the primary valuation metric used to value a REIT such as Silver Bay.  The value of a REIT is primarily a function of the value of its underlying real estate, and NAV values a REIT based on the actual market value of its underlying real estate. Traditional valuation methods such as book value often fail to accurately measure the value of a REIT's underlying real estate because they do not account for the fact that real estate generally appreciates over time or maintains residual value to a much greater extent than other depreciable assets.

55.    Second, Silver Bay's per share NAV is likely much greater than the unfair merger price and, thus, would likely have provided a strong signal to shareholders that the merger consideration was inadequate.  Silver Bay's NAV had steadily increased over the final five quarters that Silver Bay provided its NAV and actually exceeded the unfair merger price of $21.50 in each of the last two quarters that Silver Bay disclosed its NAV:

- on December 31, 2014, Silver Bay's NAV was *$19.93* per share;

- on March 31, 2015, Silver Bay's NAV was *$20.11* per share;

- on June 30, 2015, Silver Bay's NAV was *$21.34* per share;

- on September 30, 2015, Silver Bay's NAV was *$21.87* per share; and

- on December 31, 2015, Silver Bay's NAV was *$22.03* per share, a 10.5% increase compared to fourth quarter 2014.

56.     As highlighted in ¶¶45-47, Silver Bay's 2016 financial performance was measurably better than its 2015 performance.  Silver Bay even had its best quarter in Company history in the fourth quarter of 2016.  Thus, Silver Bay's current NAV would likely be considerably greater than both its NAV of $22.03 as of December 31, 2015, and the unfair merger price of $21.50.

57.     The Proxy's sole reference to NAV further confirms that an internal calculation of Silver Bay's NAV would likely be much greater than the merger price. While the Proxy and Proxy Supplement omitted an internal NAV calculation, Goldman compared an NAV calculation generated by a third-party financial data platform, SNL Consensus, to the merger consideration.  Predictably, the unfair merger price of $21.50 represented *a discount of 11.1%* when compared to SNL Consensus's NAV calculation of $24.18.  Third parties such as SNL Consensus typically provide NAV calculations that are lower than internal NAV calculations because these third parties are only privy to public information and are wary of overselling investments to their clients.

58.     Moreover, both Silver Bay and the Individual Defendants knew an internal calculation of Silver Bay's NAV was a particularly useful metric for valuing the Company, and, thus, it was material information that should have been disclosed in the Proxy and Proxy Supplement.  In fact, Silver Bay calculated and disclosed its NAV virtually every quarter from August 2013 through December 2015.  Silver Bay went so far as to draft a press release every quarter from October 2014 through December 2015 that discussed Silver Bay's NAV in detail and reconciled its NAV with its book value. Silver Bay dedicated a section of its website to these press releases.

- 16 -

59.    In addition, Silver Bay has repeatedly and explicitly explained to its shareholders that NAV is a useful metric that *should be considered when valuing Silver Bay*.  For example, in a February 24, 2016 press release that discussed Silver Bay's fourth quarter 2015 NAV, Silver Bay stated:

> *Silver Bay provides the Estimated NAV and believes such metric is useful as an additional tool for investors seeking to value the Company.  This metric should be considered along with other available information in valuing and assessing Silver Bay*, including the Company's GAAP financial measures or other cash flow or yield metrics and should not be viewed as a substitute for book value, net investments in real estate, equity, net income (loss) or cash flows from operations prepared in accordance with GAAP, or as a measure of the Company's profitability or liquidity.

60.    Silver Bay repeated this exact or similar language in several press releases and SEC filings from 2013 until the beginning of 2016.  However, Silver Bay stopped providing this language to its shareholders once Brock was appointed interim CEO and president. Likewise, Silver Bay stopped disclosing its NAV all together once Brock was appointed permanent CEO and president.

61.    Tricon and TAH also knew that Silver Bay's NAV was information particularly material to Silver Bay shareholders.  Indeed, when touting the benefits of the Acquisition in a letter to Tricon shareholders, Berman, president and CEO of Tricon, explicitly highlighted the fact that the transaction would be *immediately accretive to Tricon's NAV*.  Specifically, Berman stated:

> The combination of Tricon American Homes ("TAH") and Silver Bay, which we expect to close in the second quarter of this year, will create the fourth largest publicly-owned single-family rental landlord in the U.S. with over 16,800 rental homes.  The combined business will focus on 18 complementary Sunbelt markets across ten states, resulting in enhanced scale and market density that is expected to drive meaningful operating cost

synergies.  ***As a result, we expect the transaction to be immediately accretive to Tricon's earnings per share and net asset value***.

62.     The Proxy's omission of an internal calculation of Silver Bay's NAV renders several portions of the Proxy materially misleading.

63.     The omission renders Goldman's conclusion that the merger consideration is fair materially misleading.   The Proxy repeatedly states that Goldman concluded the merger consideration was fair based on its valuation analyses.   For example, the Proxy states on page 54:

> Goldman Sachs rendered its opinion to the Board on February 27, 2017, which opinion was subsequently confirmed in a written opinion dated as of the same date, that, as of the date of such opinion, and based upon and subject to the factors and assumptions set forth therein, the $21.50 in cash per share of Silver Bay common stock to be paid to the holders (other than Tricon and its affiliates) of shares of Silver Bay common stock pursuant to the merger agreement was fair from a financial point of view to such holders.

64.     The omission of Silver Bay's NAV also renders the Board's recommendation that Silver Bay shareholders vote in favor of the Acquisition in both the Proxy and Proxy Supplement materially misleading.

65.     The Proxy states on multiple occasions that the Board unanimously recommends that Silver Bay shareholders vote in favor of the Acquisition based, in part, on Goldman's fairness opinion and conclusion that the merger consideration is fair.   For example, on page 51 and under the heading "Recommendation of the Board and Reasons for the Merger," the Proxy states that the Board has unanimously "resolved to recommend that the stockholders of Silver Bay entitled to vote thereon vote in favor of

the approval of the merger, the merger agreement and other actions and transactions contemplated by the merger agreement."

66.    On the same page, the Proxy provides the following as a reason for the Board's unanimous recommendation of the merger:

> [T]he financial analysis presentation of Goldman Sachs, and the opinion of Goldman Sachs delivered to the Board on February 27, 2017, and subsequently confirmed in writing, that, as of such date, and based upon and subject to the factors and assumptions set forth therein, the $21.50 in cash per share of Silver Bay common stock to be paid to the holders (other than Tricon and its affiliates) of Silver Bay common stock pursuant to the merger agreement was fair from a financial point of view to such holders . . . .

67.    Likewise, the Proxy Supplement states that the Board continues to unanimously recommend that Silver Bay shareholders vote in favor of the Acquisition. Specifically, the Proxy Supplement states:

> The Company's Board of Directors continues to unanimously recommend that you vote (1) "FOR" the approval of the Merger, the Merger Agreement and the other actions and transactions contemplated in the Merger Agreement; and (2) "FOR" the approval of any proposal submitted to a vote of stockholders to approve the adjournment of the special meeting to a later date or dates, if necessary or appropriate, to solicit additional proxies if there are insufficient votes to approve the Merger, the Merger Agreement and the other actions and transactions contemplated by the Merger Agreement at the time of the special meeting.

68.    These statements were designed to convince shareholders to vote in favor of the Acquisition and to illustrate that $21.50 is a fair price for Silver Bay shareholders.

69.    However, both Goldman's determination that the merger consideration was fair and the Board's recommendation to shareholders to vote in favor of the Acquisition were materially misleading because they were not based on financial analyses that incorporated or analyzed the best metric for valuing Silver Bay – NAV.  Rather, they

were based on Goldman's incomplete financial analyses that computed per share present values for Silver Bay based only on an Illustrative DCF Analysis, an Illustrative Present Value of Future Share Price Analysis, and a Premiums Paid Analysis.  As Silver Bay repeatedly explained to shareholders, "[NAV] is useful as an additional tool for investors seeking to value the Company.  This metric **should be considered** along with other available information in valuing and assessing Silver Bay."

70.    Defendants were aware of the requirement under the federal securities laws to disclose the foregoing material information in the Proxy and Proxy Supplement, and acted with that knowledge when they failed to ensure that this material information was disclosed.

71.    Defendants' failure to disclose information that was material to Silver Bay shareholders' decision to vote in favor of the Acquisition violated §§14(a) and 20(a) of the 1934 Act and harmed Silver Bay shareholders by preventing them from casting an informed vote on the Acquisition and ultimately causing the Silver Bay shareholders to forfeit their shares for the unfair price of $21.50 per share.  Plaintiff seeks monetary damages to remedy Defendants' violations of §§14(a) and 20(a).

**Individual Defendants, Tricon and TAH Had**
**Direct Control Over the Content of the Proxy**

72.    The Individual Defendants had absolute control over the factors they chose to disclose to Silver Bay shareholders as substantiating their recommendation of the Acquisition.  In addition, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the content and dissemination of the Proxy and Proxy Supplement by virtue of their positions as officers and/or

directors of Silver Bay, their participation in and/or awareness of Silver Bay's operations, and their intimate knowledge of the false statements contained in these documents. Thus, the Individual Defendants are responsible for the false and misleading statements in the Proxy and Proxy Supplement identified above.

73.    Tricon and TAH, like the Individual Defendants, had the power to influence and control and did influence and control, directly or indirectly, the content of the Proxy and Proxy Supplement pursuant to the Merger Agreement. Thus, Tricon and TAH are responsible for the false and misleading statements in the Proxy and Proxy Supplement identified above. As stated in §7.1 of the Merger Agreement:

> (a)    As promptly as practicable after the date of this Agreement, Company shall, with the assistance and reasonable cooperation of the Parent [TAH], prepare and file the Proxy Statement with the SEC in preliminary form as required by the Exchange Act. Each of the Parent Parties [Tricon, TAH, and related entities] and the Company Parties shall furnish all information concerning itself and its Affiliates that is required to be included in the Proxy Statement. Neither the Proxy Statement, nor any amendment or supplement thereto, or any other materials used in connection with the Company Stockholder Meeting, shall be filed or disseminated without providing Parent a reasonable opportunity to review and comment thereon, which comments Company shall consider in good faith. If at any time prior to the Company Stockholder Meeting, any information relating to any of the Parent Parties and the Company Parties or any of their respective Affiliates, directors or officers should be discovered by any Company Party or any Parent Party which should be set forth in an amendment or supplement to the Proxy Statement, so that such document would not include any misstatement of a material fact or omit to state any material fact necessary to make the statements therein, in light of the circumstances under which they are made, not misleading, the Party which discovers such information shall promptly notify the other Party and Company shall promptly file with the SEC an appropriate amendment or supplement describing such information and, to the extent required by applicable Law, disseminate such amendment or supplement to the Stockholders. Company shall promptly provide Parent with any comments or requests that may be received from the SEC or its staff with respect to the Proxy Statement, the Mergers or any of the other transactions

contemplated by this Agreement. Company will provide Parent with a reasonable opportunity to review and comment on any response thereto, which comments Company shall consider in good faith.  Company shall respond promptly to any such comments or requests made by the SEC or its staff with respect to the Proxy Statement, the Mergers or any of the other transactions contemplated by this Agreement.    All documents that Company is responsible for filing with the SEC in connection with the Mergers will comply as to form and substance in all material respects with the applicable requirements of the Exchange Act and the rules and regulations thereunder.

## COUNT I

### For Violations of §14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Silver Bay

74.     Plaintiff repeats and realleges each allegation set forth herein.

75.     The Individual Defendants and Silver Bay disseminated and filed the materially false and misleading Proxy and Proxy Supplement. In both the Proxy and Proxy Supplement, the Individual Defendants and Silver Bay made untrue statements of material fact and omitted material facts necessary to make the statements made not misleading in violation of §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.  By virtue of their positions, the Individual Defendants and Silver Bay were aware of this information and of their duty to disclose this information in the Proxy and Proxy Supplement.

76.     The Proxy and Proxy Supplement were prepared, reviewed and/or disseminated by the Individual Defendants and Silver Bay.   The Proxy and Proxy Supplement omitted and/or misrepresented material information regarding Silver Bay's intrinsic value.

77.    The Individual Defendants and Silver Bay were at least negligent in filing the Proxy and Proxy Supplement with these materially false and misleading statements.

78.    The omissions and false and misleading statements in the Proxy and Proxy Supplement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Acquisition.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy, the Proxy Supplement and in other information reasonably available to shareholders.

79.    The false and misleading statements in the Proxy and Proxy Supplement were an essential link in causing plaintiff and the other Silver Bay shareholders to vote in favor of the Acquisition at the May 5, 2017 special shareholder meeting and to ultimately forfeit their shares for the unfair price of $21.50 per share.

80.    By reason of the foregoing, the Individual Defendants and Silver Bay have violated §14(a) of the 1934 Act and SEC Rule 14a-9(a) promulgated thereunder.  As a result of these violations, plaintiff and all other Class members were harmed.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against the Individual Defendants, Tricon and TAH

81.    Plaintiff repeats and realleges each allegation set forth herein.

82.    The Individual Defendants acted as controlling persons of Silver Bay within the meaning of §20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Silver Bay and their participation in and/or awareness of the Company's operations and/or intimate knowledge of the false

- 23 -

statements contained in the Proxy and Proxy Supplement filed with the SEC, they had the

power to influence and control and did influence and control, directly or indirectly, the

decision-making of the Company, including the content and dissemination of the various

statements which plaintiff contends are false and misleading.

83.    In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to

have had the power to control or influence the particular transactions giving rise to the

securities violations as alleged herein, and exercised the same.  Both the Proxy and Proxy

Supplement contained the unanimous recommendation of each of the Individual

Defendants to approve the Acquisition.  The Individual Defendants were thus directly

involved in the making of this document.

84.    Tricon and TAH acted as controlling persons of Silver Bay and Individual

Defendants within the meaning of §20(a) of the 1934 Act as alleged herein.  Pursuant to

the Merger Agreement, Tricon and TAH possessed control over Silver Bay and the

Individual Defendants.

85.    In particular, Tricon and TAH  had direct supervisory control over Silver

Bay, pursuant to the Merger Agreement, as each was able to restrict the conduct of Silver

Bay's business prior to the consummation of the Acquisition, subject to specific

limitations, which may have delayed or prevented Silver Bay from undertaking business

opportunities that arose prior to the completion of the Acquisition and that, absent the

Merger Agreement, Silver Bay might have pursued. Among other things, Tricon and

TAH had direct supervisory control over the preparation and dissemination of the Proxy

and Proxy Supplement, including the composition of each document and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy and Proxy Supplement.

86.    Each of the Individual Defendants, Tricon and TAH was provided with or had unlimited access to copies of the Proxy and Proxy Supplement prior to and/or shortly after these documents were issued and therefore had the ability to prevent the issuance of the false and misleading statements contained therein or cause the statements to be corrected.

87.    In addition, as the Proxy sets forth, the Individual Defendants, Tricon and TAH were each involved in negotiating, reviewing and/or approving the Acquisition. The Proxy describes the various issues and information that they reviewed and considered, and these descriptions had input from the Individual Defendants, Tricon and TAH.

88.    By virtue of the foregoing, the Individual Defendants, Tricon and TAH have violated §20(a) of the 1934 Act.  The Individual Defendants, Tricon and TAH had the ability to exercise control over and did control a person or persons who each violated §14(a) and SEC Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, the Individual Defendants, Tricon and TAH are liable pursuant to §20(a) of the 1934 Act.  As a direct and proximate result of these defendants' conduct, plaintiff and all other Class members were harmed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands monetary and other relief in plaintiff's favor and in favor of the Class and against Defendants, as follows:

A.      Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.      Declaring that Defendants violated the federal securities laws as set forth herein by disseminating and filing the Proxy and Proxy Supplement in connection with the Acquisition, which contain materially false and misleading statements about the Acquisition.

C.      Awarding monetary damages, including rescissory damages, in favor of plaintiff and the Class;

D.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  May 11, 2017              REINHARDT WENDORF & BLANCHFIELD
                                 GARRETT D. BLANCHFIELD, JR. (#209855)


                                 _____
                                        *s/Garrett D. Blanchfield, Jr.*
                                 GARRETT D. BLANCHFIELD, JR.

- 26 -

BRANT D. PENNEY (#316878)
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN  55101
Telephone:  651/287-2100
651/287-2103 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID T. WISSBROECKER
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

JOHNSON & WEAVER, LLP
FRANK J. JOHNSON
600 West Broadway, Suite 1540
San Diego, CA  92101
Telephone:  619/230-0063
619/255-1856 (fax)

JOHNSON & WEAVER, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY  10016
Telephone:  212/802-1486
212/602-1592 (fax)

Attorneys for Plaintiff

I:\Admin\CptDraft\Deal\CPT Silver Bay.docx

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

MARVIN H. SCHWARTZ ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:  plaintiff holds 17,720 shares of Silver Bay stock as of the date of the certification and was a holder of Silver Bay at all relevant times.

5.    Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

None.

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28 day of April, 2017.

_____
MARVIN H. SCHWARTZ

SILVER BAY